**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 23-cr-00026 |
| | : | |
| DIANE GILLARD (1), PHILLIP GILLARD (2), | : | |
| RAPHAEL SANCHEZ (3), SHARIF | : | |
| JACKSON (4), AMIN WHITEHEAD (5), | : | |
| CESAR MALDONADO (6), TERRENCE | : | |
| MAXWELL (7), MELVIN DREHER (8), and | : | |
| ARRON PRENO (9) | : | |

---

**MEMORANDUM OPINION**

GALLAGHER, J.                                                        **January 22, 2024**

The Government has filed several motions *in limine* seeking rulings in advance of a jury

trial scheduled in early February 2024 in this multi-defendant criminal case involving charges of

conspiracy to commit drug trafficking as well as other firearms and drug offenses. Those motions

include: (1) motions *in limine* seeking admission of prior felony convictions of four named

defendants for impeachment purposes under Federal Rule of Evidence 609(a)(1)(B); (2) a motion

*in limine* seeking admission of audio and video recordings; and (3) a motion *in limine* seeking a

determination that certain proposed trial exhibits are authentic business records within the meaning

of Federal Rule of Evidence 803(6). As discussed in more detail below, the Court will deny the

motions *in limine* seeking admission of prior felony convictions under Federal Rule of Evidence

609(a)(1)(B), deny the motion *in limine* seeking admission of certain audio and video recordings,

and grant the motion *in limine* seeking a preliminary determination that certain business records

are authentic under Federal Rule of Evidence 803(6).

## I.      BACKGROUND

On January 24, 2023, the Grand Jury returned a 50-count Indictment charging Defendants, Diane Gillard, Phillip Gillard, Raphael Sanchez, Sharif Jackson, Amin Whitehead, Cesar Maldonado, Terrence Maxwell, Melvin Dreher, and Arron Preno, with various drug and firearm charges, all arising out of illegal activities occurring in Philadelphia, Pennsylvania, from approximately April 2021 through January 6, 2023. *See* ECF No. 1. Then, on July 18, 2023, the Grand Jury returned a 54-count Superseding Indictment charging Defendants with similar types of offenses, adding a few additional charges, and extending the period of alleged criminal activity to include approximately April 2021 through January 25, 2023. *See* ECF No. 91. In the Superseding Indictment, the Grand Jury charged Defendants Diane Gillard, Phillip Gillard, Raphael Sanchez, Sharif Jackson, Amin Whitehead, Cesar Maldonado, and Terrence Maxwell with conspiracy to distribute methamphetamine, phencyclidine ("PCP"), fentanyl, cocaine base ("crack"), cocaine, and heroin, in violation of 21 U.S.C. § 846.[1] *See* Superseding Indictment at 1–13, ECF No. 91. The other charges against each Defendant contained in the Superseding Indictment are as follows:

1.  <u>Diane Gillard</u>
    - 19 counts of distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)-(B);[2]
    - 19 counts of distribution of a controlled substance within 1,000 feet of a protected location, in violation of 21 U.S.C. § 860(a);[3] and
    - One count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(e).[4] *See id.* at 14–23, 27–34, 39–40, 44–64.

2.  <u>Phillip Gillard</u>
    - Three counts of distribution of 1,000 grams or more of PCP, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A);[5]

---

[1] Count 1.
[2] Counts 2, 4, 6, 8, 10, 15, 17, 19, 21, 27, 32, 35, 37, 39, 41, 43, 45, 47, 49.
[3] Counts 3, 5, 7, 9, 11, 16, 18, 20, 22, 28, 33, 36, 38, 40, 42, 44, 46, 48, 50.
[4] Count 51.
[5] Counts 27, 45, and 49.

- Two counts of distribution of 100 grams or more of PCP, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B);[6]
- Three counts of distribution of 1,000 grams or more of PCP within 1,000 feet of a protected location, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 860(a);[7]
- Two counts of distribution of 100 grams or more of PCP within 1,000 feet of a protected location, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 860(a);[8]
- One count of possession with intent to distribute 1,000 grams or more of PCP, 500 grams or more of cocaine, fentanyl, crack, and heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)-(C);[9]
- One count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1);[10] and
- One count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).[11] *See id.* at 27–28, 31–32, 39–40, 57–58, 61–62, 65–67.

3. <u>Raphael Sanchez</u>
- Six counts of distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A);[12] and
- Six counts of distribution of 50 grams or more of methamphetamine within 1,000 feet of a protected location, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 860(a).[13] *See id.* at 16–19, 22–23, 29–30, 33–34, 55–56.

4. <u>Sharif Jackson</u>
- Two counts of distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A);[14] and
- Two counts of distribution of 50 grams or more of methamphetamine within 1,000 feet of a protected location, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 860(a).[15] *See id.* at 29–30, 51–52.

5. <u>Amin Whitehead</u>
- One count of distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A);[16]

---

[6] Counts 15 and 19.

[7] Counts 28, 46, and 50.

[8] Counts 16 and 20.

[9] Count 52.

[10] Count 53.

[11] Count 54.

[12] Counts 4, 6, 10, 17, 21, and 43.

[13] Counts 5, 7, 11, 18, 22, and 44.

[14] Counts 17 and 39.

[15] Counts 18 and 40.

[16] Count 4.

- Two counts of distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C);[17]
- One count of possession with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C);[18]
- Three counts of distribution of a controlled substance within 1,000 feet of a protected location, in violation of 21 U.S.C. § 860(a);[19]
- One count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1);[20] and
- One count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).[21] *See id.* at 16–17, 35–38, 41–43.

6. <u>Caesar Maldonado</u>
   - Two counts of distribution of 40 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B);[22] and
   - Two counts of distribution of 40 grams or more of fentanyl within 1,000 feet of a protected location, in violation of 21 U.S.C. § 860(a).[23] *See id.* at 53–54, 59–60.

7. <u>Terrence Maxwell</u>
   - One count of possession with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C);[24]
   - One count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1);[25] and
   - One count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).[26] *See id.* at 24–26.

8. <u>Melvin Dreher</u>
   - One count of distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A);[27] and
   - One count of distribution of 50 grams or more of methamphetamine within 1,000 feet of a protected location, in violation of 21 U.S.C. §§ 860(a), 841(a)(1), (b)(1)(A).[28] *See id.* at 33–34.

---

[17] Counts 23 and 25.
[18] Count 29.
[19] Counts 5, 24, and 26.
[20] Count 30.
[21] Count 31.
[22] Counts 41 and 47.
[23] Counts 42 and 48.
[24] Count 12.
[25] Count 14.
[26] Count 13.
[27] Count 21.
[28] Count 22.

9. <u>Arron Preno</u>
- One count of distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).[29]

On October 17, 2023, the Government filed the following motions *in limine*: (1) four Motions *in Limine* to Admit Evidence under Federal Rule of Evidence 609(a)(1) (individually referred to as the "Rule 609(a)(1) Motion") as to Defendants Diane Gillard ("Ms. Gillard"), Phillip Gillard ("Mr. Gillard"), Sharif Jackson ("Jackson"), and Terrence Maxwell ("Maxwell"), *see* ECF Nos. 172–75; (2) a Motion *in Limine* to Admit Recordings as to all Defendants ("Recordings Motion"), *see* ECF No. 177; and (3) a Motion *in Limine* for a Determination that Records Qualify as Business Records Under Federal Rule of Evidence 803(6) as to all Defendants ("Business Records Motion"), *see* ECF No. 179. Mr. Gillard filed responses in opposition to the Rule 609(a)(1) Motion, Recordings Motion, and Business Records Motion on November 28, 2023. *See* ECF Nos. 197–99. Defendant Melvin Dreher ("Dreher") filed responses in opposition to the Recordings Motion and Business Records Motion on December 4, 2023. *See* ECF No. 203–04. On the same date, Jackson filed responses to the Rule 609(a)(1) Motion, Recordings Motion, and Business Records Motion. *See* ECF Nos. 205–07. No other Defendant filed a response to the Government's motions.[30] These motions are ripe and will be addressed in turn.[31]

---

[29] Count 34.

[30] To date, Defendants Ms. Gillard, Raphael Sanchez, Amin Whitehead, Cesar Maldonado, and Arron Preno have entered guilty pleas and are awaiting sentencing. The Court will deny as moot any motions or parts of motions the Government filed regarding these Defendants.

[31] As discussed later in this Memorandum Opinion, the Court held a status of counsel hearing with Mr. Gillard and his counsel on January 17, 2024. During the hearing, Mr. Gillard expressed his desire to represent himself at trial with the assistance of standby counsel. After a thorough colloquy of Mr. Gillard to ensure his choice to represent himself was knowing, intelligent, and voluntary, the Court permitted his counsel to withdraw and indicated that an order would be entered appointing standby counsel for him. Thus, Mr. Gillard is now proceeding in a *pro se* capacity with the assistance of standby counsel. *See* ECF No. 255.

## II.   DISCUSSION

### A.   Rule 609(a)(1) Motions as to Mr. Gillard, Jackson, and Maxwell (ECF Nos. 172–74)

The Government moves for entry of an order permitting it to impeach Mr. Gillard, Jackson, and Maxwell with some of their prior felony convictions under Federal Rule of Evidence 609(a)(1) should they testify on their own behalves at trial. *See* ECF Nos. 172–74. The Court will first identify the prior felony convictions the Government is seeking to introduce for impeachment purposes should these Defendants testify at trial, then set forth the applicable law and the parties' arguments, before finally addressing the admissibility of the prior felony convictions under Rule 609(a)(1).

### 1.   Prior Felony Convictions Sought to be Introduced

The Defendants' prior felony convictions the Government seeks to introduce for impeachment purposes under Rule 609(a) are:

<u>For Mr. Gillard</u>

- September 9, 2014 convictions for (1) persons not to possess firearms in violation of 18 Pa. C.S. § 6105(a), graded as a second-degree felony, and (2) firearms not to be carried without a license in violation of 18 Pa. C.S. § 6106(a)(1). The trial court sentenced Mr. Gillard to a minimum of 11 months to a maximum of 23 months' incarceration, to be followed by 3 years' probation;[32] and

- October 25, 2016 convictions for (1) two counts of possession with intent to distribute a controlled substance in violation of 35 P.S. § 780-113(a)(30), and (2) one count of possession of an instrument of crime, in violation of 18 Pa. C.S. § 907(a). The trial court sentenced Mr. Gillard to a minimum of 11 months to a maximum of 23 months' incarceration, to be followed by 5 years' probation.[33] *See* Gov't's Mot. in Limine to Admit Evid. Under Fed. R. Evid. 609(a)(1) ("Gov't's Mr. Gillard Mot.") at 2–3, Doc. No. 174.

---

[32] *See Commonwealth v. Phillip Gillard*, No. CP-51-CR-0000262-2012 (Phila. Ct. Com. Pl.).

[33] *See Commonwealth v. Phillip Gillard*, No. CP-51-CR-0014109-2014 (Phila. Ct. Com. Pl.).

For Jackson

- A December 9, 2013 conviction for possession with intent to deliver a controlled substance, in violation of 35 P.S. § 780-113(a)(30). The trial court sentenced Jackson to a minimum of four years to a maximum of eight years' incarceration in a state correctional institution.[34] *See* Gov't's Mot. in Limine to Admit Evidence Under Fed. R. Evid. 609(a)(1) ("Gov't's Jackson Mot.") at 2, ECF No. 173.[35]

For Maxwell

- February 2012 convictions for aggravated assault (graded as a first-degree felony) and persons not to possess firearms (graded as a second-degree felony), via guilty plea, in the Court of Common Pleas of Philadelphia County,[36] for which he received a sentence of incarceration for a minimum of five years to a maximum of ten years, to be followed by five years' probation; and

- March 2011 conviction for Robbery (graded as a first-degree felony), for which he received a sentence of incarceration for a minimum of six years to a maximum of twelve years.[37] *See* Gov't's Mot. in Limine to Admit Evidence Under Fed. R. Evid. 609(a)(1) ("Gov't's Maxwell Mot.") at 2–3, 5, ECF No. 172.

### 2.    Applicable Law – Admissibility of Prior Convictions for Impeachment Purposes

Federal Rule of Evidence 609 governs "Impeachment by Evidence of a Criminal Conviction." Fed. R. Evid. 609. The Rule addresses the admissibility for impeachment purposes of two kinds of prior criminal convictions: (1) A prior conviction where the potential punishment is imprisonment for more than one year, generally noted as "felony" offenses; and (2) A prior

---

[34] *See Commonwealth v. Sharif Jackson*, No. CP-51-CR-0000547-2013 (Phila. Ct. Com. Pl.)

[35] In its Motion, the Government also sought to introduce Jackson's 2009 felony conviction for possession with intent to deliver in the Court of Common Pleas of Philadelphia County. *See id.* at 2. During the evidentiary hearing, counsel for the Government represented that they would not seek to introduce the 2009 conviction as impeachment evidence under Rule 609(a)(1). As such, the Court will deny that part of the Government's Motion as moot.

[36] In an earlier portion of the Government's Motion, it indicates that these convictions occurred in 2022. *See id.* at 2. Later in the Motion, the Government states that the convictions occurred in 2012. *See id.* at 5. Although the Government did not provide the docket numbers for the criminal cases in which these convictions occurred, it appears that its reference to 2022 was in error.

[37] The Government does not point out the name of the court in which this conviction occurred.

conviction where the elements of the criminal offense involve dishonesty or false statement, commonly referred to as "crimen falsi" offenses. *See id.*; *see also Crimen Falsi*, Black's Law Dictionary (11th ed. 2019) (defining crimen falsi as: "**1.** A crime in the nature of perjury. . . . **2.** Any other offense that involves some element of dishonesty or false statement." (citing Fed. R. Evid. 609(a)(2))). The justification for admitting these types of prior convictions is that "[the] evidence helps the trier of fact accurately determine the credibility of a person who might otherwise misleadingly appear to have led a blameless life." 28 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6132 (2d ed. 1987) (Apr. 2023 Update).[38] Additionally, prior convictions for crimen falsi offenses "permit an inference that the witness has that specific character trait and, thus, may lie when testifying." *Id.* As for prior felony convictions, they "supposedly reveal a more general character trait: the witness is not law abiding. The presence of this trait suggests that the witness may be as willing to lie under oath as the witness was willing to engage in the criminal behavior that led to the conviction." *Id.* These justifications are not uniformly agreed-upon, as demonstrated by Rule 609's contentious legislative history, and, as such, Rule 609 "remains one of the most controversial" Rules of Evidence. *See id.* (explaining that "Rule 609 was the most fiercely fought-over provision in the Evidence Rules"); *Diggs v. Lyons*, 741 F.2d 577, 579–81 (3d Cir. 1984) (conducting review of legislative history of Rule 609(a)).

Despite its possible controversial nature, Rule 609(a) governs the admissibility of the prior criminal convictions at issue in the Government's Motions *in Limine*. Pursuant to Federal Rule of Evidence 609(a)(1),

> evidence of a prior conviction by a testifying defendant must be admitted if the offense was punishable by more than one year of imprisonment and "the probative

---

[38] This general justification is supported by the notion that "any doubts that the witness engaged in misconduct are said to be negligible since the conviction rests on a showing that satisfied the most demanding burden of proof." *Id.*

value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B). However, "if more than 10 years have passed since the witness's conviction or release from confinement," the conviction is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1) (emphasis added). Convictions older than ten years are therefore "presumptively excluded," *United States v. Caldwell*, 760 F.3d 267, 287 (3d Cir. 2014), and "will be admitted *very rarely* only in *exceptional circumstances*," *United States v. Shannon*, 766 F.3d 346, 352 n.9 (3d Cir. 2014) (emphasis in original). . . . The Third Circuit has not definitively resolved when the ten-year period is deemed to begin or end, but has indicated in dicta that it begins when the witness is released from prison and ends on the date of trial. *See United States v. Thomas*, 815 F. App'x 671, 677 & n.2 (3d Cir. 2020); *United States v. Hans*, 738 F.2d 88, 93 (3d Cir. 1984).

*United States v. Dubose*, 639 F. Supp. 3d 503, 514 (E.D. Pa. 2022).

Resolving issues about the admissibility of prior convictions against a testifying defendant for Rule 609(a)(1) purposes is a four-step process. First, the court must determine if (1) the defendant's prior conviction sought to be introduced is (a) a felony, i.e., "punishable by more than one year of imprisonment" or (b) "readily determin[able]" to have elements "requir[ing] proving--or the [defendant] admitting--a dishonest act or false statement." Fed. R. Evid. 609(a)(1), (2). Second, the court must analyze whether "more than 10 years have passed since the [defendant's] conviction or release from confinement, whichever is later." Fed. R. Evid. 609(b); *see also United States v. Williams*, 892 F.2d 296, 299, 301 (3d Cir. 1989) ("We have previously assumed that the relevant inquiry under Rule 609(b) is whether the date of conviction or release occurred "more than ten years prior to trial"), *superseded by statute on other grounds as indicated in Stinson v. United States*, 508 U.S. 36, 39 n.1 (1993). Third, "if [less] than 10 years have passed since the [defendant's] conviction or release from confinement for it, whichever is later," and "the court can readily determine that establishing the elements of the crime required proving--or the [defendant] admitting--a dishonest act or false statement," the court must admit the prior conviction for impeachment purposes. Fed. R. Evid. 609(a)(2). Finally, if the admissibility of the prior conviction

is not resolved by the third step, and the crime "was punishable by death or by imprisonment for more than one year," the court must conduct one of two analyses depending on the age of the defendant's prior conviction at issue: "[I]f [less] than 10 years have passed since the [defendant's] conviction or release from confinement for it, whichever is later," then the court must determine whether "the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B), (b). On the other hand, "if more than 10 years have passed since the [defendant's] conviction or release from confinement for it, whichever is later," then the court must determine whether "its probative value, supported by specific facts and circumstances, ***substantially*** outweighs its prejudicial effect." Fed. R. Evid. 609(a)(1), (b)(1) (emphasis added).[39]

Here, since the Government is seeking to introduce prior convictions which are "punishable by more than one year of imprisonment," and "less than 10 years have passed since [Defendants'] . . . release from confinement" for those convictions (as explained below), the Court is tasked with conducting the first of the two analyses at step four, which requires a balancing of whether "the probative value of the evidence outweighs its prejudicial effect to" Defendants. Fed. R. Evid. 609(a)(1)(B), (b); *see Gov't of Virgin Islands v. Bedford*, 671 F.2d 758, 761 (3d Cir. 1982) ("Rule 609(a)(1) is absolutely clear and explicit in requiring the trial court, before admitting evidence of a prior conviction, to make a determination [under Federal Rule of Evidence 403], that the probative value of the evidence outweighs its prejudicial effect to the defendant."). "This reflects a heightened balancing test and a reversal of the standard for admission under [Federal Rule of Evidence] 403." *Caldwell*, 760 F.3d at 286.[40]

---

[39] This analysis also applies to prior convictions for crimes with elements requiring "proving--or the witness's admitting--a dishonest act or false statement," which are more than ten years old. Fed. R. Evid. 609(b).

[40] In *Caldwell*, the Third Circuit Court of Appeals noted that "[c]ommentators have observed that structuring the balancing in this manner creates a 'predisposition toward exclusion[,]' [and] '[a]n

"[T]o determine whether the probative value of a past conviction outweighs its prejudicial effect under Rule 609" this Court must consider four factors (commonly referred to as the "*Bedford* factors"): "'(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness' testimony to the case; [and] (4) the importance of the credibility of the defendant.'" *Dubose*, 639 F. Supp. 3d at 514 (second alteration in original) (quoting *Bedford*, 671 F.2d at 761 n.4). "The ultimate inquiry is 'whether the admission of this conviction ha[s] the potential to so prejudice the jury that its weighing of all the factual issues in the entire case may be impaired.'" *Seawright v. Banning*, Civ. A. No. 18-4811, 2023 WL 3983790, at *2 (E.D. Pa. June 13, 2023) (alterations in original) (quoting *Sharif v. Picone*, 740 F.3d 263, 274 (3d Cir. 2014)).

The Court's consideration of each *Bedford* factor is guided by the following principles:

> When evaluating the first factor—the kind of crime involved—courts consider both the impeachment value of the prior conviction as well as its similarity to the charged crime. The impeachment value relates to how probative the prior conviction is to the witness's character for truthfulness. 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 609.06 [3][b] (2d ed.2011) [hereinafter *Weinstein's Federal Evidence*]. Crimes of violence generally have lower probative value in weighing credibility, but may still be admitted after balancing the other factors. In contrast, crimes that by their nature imply some dishonesty, such as theft, have greater impeachment value and are significantly more likely to be admissible. *Id.*

> With respect to the similarity of the crime to the offense charged, the balance tilts further toward exclusion as the offered impeachment evidence becomes more similar to the crime for which the defendant is being tried. As the Fourth Circuit has explained:

>> Admission of evidence of a similar offense often does little to impeach the credibility of a testifying defendant while undoubtedly prejudicing him. The jury, despite limiting instructions, can hardly avoid drawing the inference that the past conviction suggests some probability that defendant committed the similar offense for which

---

exception is made only where the prosecution shows that the evidence makes a tangible contribution to the evaluation of credibility and that the usual high risk of unfair prejudice is not present.'" *Caldwell*, 760 F.3d at 286 (quoting Wright & Gold, *Federal Practice and Procedure* § 6132, at 216, 217).

he is currently charged. The generally accepted view, therefore, is that evidence of similar offenses for impeachment purposes under Rule 609 should be admitted sparingly if at all.

*United States v. Sanders*, 964 F.2d 295, 297–98 (4th Cir. 1992) (quoting *United States v. Beahm*, 664 F.2d 414, 418–19 (4th Cir. 1981)); *see also Weinstein's Federal Evidence* § 609.05[3][d] ("[P]rior convictions for the same or similar crimes are admitted sparingly."); Wright & Gold, *Federal Practice and Procedure* § 6134, at 253 ("[T]he danger of unfair prejudice is enhanced if the witness is the accused and the crime was similar to the crime now charged, since this increases the risk that the jury will draw an impermissible inference under Rule 404(a)."); *cf. United States v. Hans*, 738 F.2d 88, 94 (3d Cir. 1984) (finding that district court did not abuse its discretion by excluding evidence of prior crime because it was "too similar" to the charged offense).[41]

The second factor is the age of the prior conviction. Convictions more than ten years old are presumptively excluded and must satisfy the special balancing requirements in Rule 609(b) to overcome this presumption. But even where the conviction is not subject to the ten-year restriction, "the passage of a shorter period can still reduce [a prior conviction's] probative value." Wright & Gold, *Federal Practice and Procedure* § 6134, at 258. The age of a conviction may weigh particularly in favor of exclusion "where other circumstances combine with the passage of time to suggest a changed character." *Id.* For example, a prior conviction may have less probative value where the defendant-witness has maintained a spotless record since the earlier conviction or where the prior conviction was a mere youthful indiscretion. Conversely, the probative value of an older conviction may remain undiminished if the defendant was recently released from confinement or has multiple intervening convictions, both of which could suggest his character has not improved. *See id.* § 6134, at 259 (collecting cases).

---

[41] Some have suggested that the unfair prejudice of an identical prior conviction can be reduced by permitting the introduction of only the fact and date of conviction, but not the nature of the crime. *See United States v. Beahm*, 664 F.2d 414, 419 (4th Cir. 1981) (stating that the district court should have excluded the similar prior conviction "or at the very least limited disclosure to the fact of conviction without revealing its nature"). Circumstances may exist where redacting the facts underlying the prior conviction in this manner is a viable way to reduce the prejudicial effect of the evidence. However, this approach may create other obstacles to admission. There are many types of felonies, and not all felony convictions strongly support the inference that the defendant is untrustworthy. Thus, the probative value of a prior felony conviction will be diminished where the jury is not provided information about the prior conviction that would help in evaluating the extent to which the offense reflects on the defendant's veracity as a trial witness. Additionally, in a situation such as this one—where the jury is already aware that the defendant is a convicted felon—the probative value is further diminished because introducing only the fact that the defendant has a prior history of unlawful behavior would not tell the jury anything it does not already know.

The third factor inquires into the importance of the defendant's testimony to his defense at trial. "The tactical need for the accused to testify on his or her own behalf may militate against use of impeaching convictions. If it is apparent to the trial court that the accused must testify to refute strong prosecution evidence, then the court should consider whether, by permitting conviction impeachment, the court in effect prevents the accused from testifying." Glenn Weissenberger & James J. Duane, *Weissenberger's Federal Evidence* § 609.2 (4th ed. 2001); *see also* Weinstein's Federal Evidence § 609.05[3][e] ("A defendant's decision about whether to testify may be based in part on whether his prior convictions will be admitted for impeachment purposes. Thus, the fact that a defendant's testimony is important to demonstrate the validity of his or her defense constitutes a factor weighing against the admission of a prior conviction."). "If, on the other hand, the defense can establish the subject matter of the defendant's testimony by other means, the defendant's testimony is less necessary, so a prior conviction is more likely to be admitted." *Weinstein's Federal Evidence* § 609.05[3][e]; *see also United States v. Causey*, 9 F.3d 1341, 1344 (7th Cir. 1993) (noting that prejudicial impact diminished where defendant "did not obviously need to testify to raise his various defenses" because several other defense witnesses provided the same testimony).

The final factor concerns the significance of the defendant's credibility to the case. "When the defendant's credibility is a central issue, this weighs in favor of admitting a prior conviction." *Weinstein's Federal Evidence* § 609.05 [3][f]. *See United States v. Johnson*, 302 F.3d 139, 153 (3d Cir. 2002) (affirming admission of prior conviction under Rule 609(a) because the defendant's credibility was important). Conversely, the probative value of a defendant's prior conviction may be diminished "where the witness testifies as to inconsequential matters or facts that are conclusively shown by other credible evidence." Wright & Gold, *Federal Practice and Procedure* § 6134, at 258.[42]

---

[42] We acknowledge the tension between the related third and fourth factors. *See, e.g.*, Roger Park & Tom Lininger, The New Wigmore: Impeachment and Rehabilitation § 3.4.4.1.1.4 (2012) ("There is a tension between these two factors. Perhaps they cancel each other out."); Jeffrey Bellin, *Circumventing Congress: How the Federal Courts Opened the Door to Impeaching Criminal Defendants with Prior Convictions*, 42 U.C. Davis L. Rev. 289, 318 (2008) ("In essence, the factors cancel each other out. To the extent a defendant's testimony is 'important' (for example, if the defendant is the key defense witness), his credibility becomes 'central' in equal degree, leading to a curious equipoise.... Thus, [these] factors seem [ ] to have no practical significance at all, existing in a rough state of equipoise that prevent[s] either factor from impacting the overall impeachment calculus."); Roderick Surratt, *Prior–Conviction Impeachment Under the Federal Rules of Evidence: A Suggested Approach to Applying the 'Balancing' Provision of Rule 609(a)*, 31 Syracuse L. Rev. 907, 943 & 945 (1980) (observing that "it appears that as one of these factors increases in importance in a particular case, so does the other" and "there appears to be no principled way to determine which factor should prevail"). Be that as it may, these factors have long been accepted as independent components of the Rule 609(a)(1) balancing inquiry and we conclude that they should continue to inform the district court's admissibility determination.

*Caldwell*, 760 F.3d at 286–88 (alterations and footnotes in original).

### 3. The Parties' Arguments

Concerning Mr. Gillard, Jackson, and Maxwell, the Government's arguments are essentially the same. It contends that these Defendants' prior felony convictions are admissible under Rule 609(a)(1)(B) for impeachment purposes should they choose to testify at trial because (1) each conviction was punishable by more than one year in prison and within the ten-year requirement of Rule 609(a)(1), (2) the probative value of admitting these convictions for impeachment purposes far outweighs any prejudice to Defendants, especially insofar as any Defendant testifying in their own defense will place their credibility directly at issue and, therefore, their prior convictions will be "central to the jury's assessment of the case," (3) it will mitigate any potential prejudice by referring to each conviction as "a prior felony conviction" rather than the specific conviction, and (4) a cautionary instruction about the limited use of these convictions from the Court to the jury will further mitigate any potential prejudice. *See* Gov't's Maxwell Mot. at 3–9; Gov't's Jackson Mot. at 2–10; Gov't's Mr. Gillard Mot. at 3–10.

Only Jackson and Mr. Gillard filed responses in opposition to the Government's Motions *in Limine* related to them. *See* ECF Nos. 197, 207. In his opposition response, Mr. Gillard contends that the Court should not admit his prior felony convictions under Rule 609(a)(1)(B) because those prior convictions are not probative for honestly or veracity due to the nature of the convictions and their ages. *See* Def.'s Resp. to Gov't's Mot. to Admit Evid. Under Fed. R. Evid. 609 at ECF pp. 2, 3–7, ECF No. 197.[43] In addition, due to Mr. Gillard's prior felony convictions' similarity to his charges in the Superseding Indictment, he argues that no possible limiting instruction could

---

[43] Mr. Gillard does not contest that his convictions satisfy Rule 609(a)(1) insofar as his offenses called for imprisonment of more than one year and are less than 10 years old.

mitigate the substantial prejudice he would experience if his prior felony convictions were admitted as impeachment evidence should he decide to testify at trial. *See id.* at ECF pp. 7–8.

As for Jackson, he asserts that his 2013 felony conviction for possessing a controlled substance with intent to deliver is highly prejudicial because his charges in this case also involve controlled substances. *See* Def.'s Mem. in Opp'n to Gov't's Mot. in Limine to Admit Evid. Under Fed. R. Evid. 609 ("Jackson 609 Opp'n") at ECF p. 7, ECF No. 207. He also points out that his prior controlled substance conviction does not involve dishonesty. *See id.* He recognizes that his trial might involve distinct versions of events, so he suggests that his credibility may be at issue should he choose to testify and argues that this should weigh against admission of the prior felony conviction. *See id.* at ECF pp. 7–9.

### 4.   Analysis

#### a.   Mr. Gillard

The Government is moving for admission of Mr. Gillard's 2014 firearm convictions and his 2016 convictions for possessing a controlled substance with intent to deliver and possessing an instrument of crime.[44] *See* Gov't's Mr. Gillard Mot. at 2–3. The Government's Motion will be denied because a review of the *Bedford* factors and subsequent balancing of those factors shows

---

[44] For his possessing an instrument of crime conviction, the Government avers that Mr. Gillard was convicted under 18 Pa. C.S. § 907(a). *See* Gov't's Mr. Gillard Mot. at 3. Under the Pennsylvania Criminal Code, this conviction is graded as a first-degree misdemeanor. *See* 18 Pa. C.S. § 907(a) ("A person commits a misdemeanor of the first degree if [they] possess any instrument of crime with intent to employ it criminally."). "A crime is a misdemeanor of the first degree if it is so designated in this title or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than five years." *Id.* § 106(b)(6).

Even though the Court recognizes that this offense is graded as a first-degree misdemeanor under Pennsylvania law, it will be referred to as a "felony" throughout this Memorandum Opinion insofar as it is "punishable by imprisonment for more than one year or by death." *Felony*, BLACK'S LAW DICTIONARY (11th ed. 2019).

that the probative value of Mr. Gillard's prior felony convictions does not outweigh any prejudicial effects to him.

i.    *First Factor: The Kind of Crime Involved*

Regarding the first factor, Mr. Gillard's prior convictions are similar to those charged against him in the Superseding Indictment, namely, possessing and distributing controlled substances and firearms offenses.[45] Thus, "the balance tilts further towards exclusion." *Caldwell*, 760 F.3d at 286. In addition, neither Mr. Gillard's prior firearms convictions nor his possession of an instrument of crime conviction have little to no bearing on his character for truthfulness. *See, e.g.*, *United States v. Jackson*, 574 F. Supp. 3d 611, 616 (S.D. Ind. 2021) ("The impeachment value of offenses like the ones Jackson has been convicted of is low. The offenses show that Jackson has habitually run afoul of the law, but do not necessarily indicate that he has a propensity to lie or deceive. Unlike classic dishonesty crimes such as perjury, fraud, false statement, embezzlement, or false pretense, the crimes Jackson was convicted of—criminal gang activity, ***felon pointing a firearm***, and battery—are not particularly relevant to his credibility on the witness stand." (emphasis added)); *Davis v. Velez*, 15 F. Supp. 3d 234, 253 (E.D.N.Y. 2014) (explaining that probative value of civil rights plaintiff's prior firearms convictions "was minimal [because] the

---

[45] This is especially true concerning Mr. Gillard's prior conviction for persons not to possess firearms and his current charge of possession of a firearm by a convicted felon. To be convicted for the offense of persons not to possess firearms under Pennsylvania law, the government would have to prove that a defendant (1) was convicted of one of the enumerated felonies listed in 18 Pa. C.S. § 6105(b) and (2) "possess[ed], use[d], control[led], s[old], transfer[red] or manufacture[d] or obtain[ed] a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa. C.S. § 6105(a)(1). To be convicted of possession of a firearm by a convicted felon in this case, the government will have to prove that Mr. Gillard (1) was "convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," and (2) "possess[ed] in or affecting commerce, any firearm or ammunition; or receive[d] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1).

prior convictions would shed little light on [his] character for truthfulness"), *aff'd*, 797 F.3d 192

(2d Cir. 2015).

Mr. Gillard's prior felony drug convictions present a different issue. Seemingly because of

the discretionary nature of the admissibility inquiry under Rule 609(a)(1), there is no binding

precedent providing that prior felony drug convictions are always probative of a defendant's

character for truthfulness. Yet, there are undoubtedly cases from the Third Circuit Court of

Appeals and this District which would support a determination that a prior felony drug conviction

is probative of a defendant's character for truthfulness. For instance, it has been explained that

> courts have concluded that prior drug convictions "are relevant to a defendant's
> veracity because 'a drug trafficker lives a life of secrecy and dissembling in the
> course of that activity, being prepared to say whatever is required by the demands
> of the moment, whether the truth or a lie.'" *See, e.g.*, *United States v. Rose*, No. 07-
> CR-383, 2008 WL 650034 at *6, 2008 U.S. Dist. LEXIS 18013 at *16-17 (E.D. Pa.
> Mar. 7, 2008) (quoting *United States v. Borrome*, No. 97-00224-01, 1997 WL
> 786436 at *4, 1997 U.S. Dist. LEXIS 19302 at *11 (E.D. Pa. Dec. 2, 1997)). The
> Third Circuit, among others, have repeatedly concluded that "[t]here is no question
> that, given a proper purpose and reasoning, drug convictions are admissible in a
> trial where the defendant is charged with a drug offense." [*United States v.
> Sampson*, 980 F.2d 883, 887 (3d Cir. 1992); *United States v. Murphy*, 172 F. App'x
> 461, 463 (3d Cir. 2006)] (affirming the district court's decision to admit the
> defendant's prior drug convictions under Rule 609 and quoting the district court,
> which when considering the nature of the crime, stated "the drug convictions are,
> of course, felonies" and "being one that does involve a great deal of secrecy and
> lying, it seems to me that the first factor weighs in favor of admitting the evidence").

*United States v. Cooper*, No. 19-cr-00001, 2021 WL 3732789, at *7 (E.D. Pa. Aug. 24, 2021).

Other federal courts have reached similar conclusions. *See, e.g.*, *United States v. Alexander*, 48

F.3d 1477, 1488 (9th Cir. 1995) (explaining that prior convictions for drug offenses are relevant

to witness's veracity); *United States v. Johnson*, Crim. No. 21-143, 2022 WL 2835955, at *4–5

(M.D. Pa. July 20, 2022) (determining prior felony drug convictions probative of defendant's

character for truthfulness when analyzing first *Bedford* factor); *United States v. Crumble*, No. 18-

cr-32, 2018 WL 2016852, at *6 (E.D.N.Y. May 1, 2018) (concluding prior drug-sale conviction could have "significant probative value as to character for truthfulness").

While this Court could rely on these decisions to conclude that Mr. Gillard's prior felony drug convictions are admissible under Rule 609(a)(1)(B), there is at least one decision from this District, interestingly filed approximately one month before *Cooper*, which persuasively supports the opposite conclusion. In this decision, the court analyzed a defendant's prior felony drug conviction under the first *Bedford* factor as follows:

> The first *Bedford* factor tilts the Rule 609(a)(1)(B) balance toward exclusion. While the drug offense is not similar to the charge Bernard faces now, its probative value for establishing Bernard's character for truthfulness is low. "The degree to which drug convictions imply dishonesty varies" and "depends on the circumstances" of the conviction. *United States v. Mullins*, 2019 U.S. Dist. LEXIS 61318 at *6 (E.D. Pa. Apr. 5, 2019) (citing *United States v. Womack*, 1998 WL 24355 at *1 (D. Del. Jan. 12, 1998) (noting that "some drug offenses are generally more covert or deceptive" than others and referring to a "spectrum" of crimes with differing impeachment value)). Bernard was sentenced to 18 to 48 months' imprisonment, even after committing four prior drug offenses, suggesting he committed a low-level offense. The Government, which "bears the burden of persuading the court that the evidence should be admitted, i.e., that its probative value outweighs its prejudicial effect," provides no other details regarding the circumstances of the crime. *United States v. Ponder*, 2017 WL 2633467 at *2 (M.D. Pa. June 16, 2017) (quoting *Bedford*, 671 F.2d at 761). It does not, for instance, argue that Bernard was involved in the sort of large-scale drug conspiracy that might require deception. Thus, while a felony conviction has some inherent impeachment value, *see Mullins*, 2019 U.S. Dist. LEXIS 61318 at *6, the connection between this drug conviction and Bernard's likelihood of testifying truthfully is attenuated. *See United States v. Church*, 2016 WL 613185 at *1 (E.D. Pa. Feb. 16, 2016).

*United States v. Bernard*, Crim. A. No. 20-cr-208, 2021 WL 3077556, at *2 (E.D. Pa. July 21, 2021). There are also district court cases from inside and outside of this circuit concluding that prior drug convictions are, at best, minimally probative as to a defendant's character for truthfulness. *See, e.g.*, *United States v. Bennett*, Crim No. 21-15, 2023 WL 6810439, at *2 (W.D. Pa. Oct. 15, 2023) ("Defendant was charged and convicted of Possession With Intent to Deliver in violation of 35 Pa. Stat. § 780-113 on both occasions. Defendant also correctly states that these

non-violent crimes are not crimes of dishonesty or deceit, and therefore have low impeachment value, Indeed [sic], the Government concedes that this factor weighs in favor of excluding the evidence."); *United States v. Thomas*, No. 23-CR-041, 2023 WL 4585919, at *3 (N.D. Okla. July 18, 2023) ("Defendant's prior conviction[] for . . . possession of controlled substances do[es] not have the impeachment value of a crime involving dishonesty."); *United States v. Austin*, 641 F. Supp. 3d 1193, 1205 (D. Utah 2022) ("[T]he fact that Mr. Austin was involved in methamphetamine trafficking is not particularly relevant to his character for truthfulness as a witness."); *United States v. Parker*, Crim. No. 19-CR-227, 2020 WL 6384730, at *2 (M.D. Pa. Oct. 30, 2020) (rejecting Government's argument "that the nature of [the defendant's] prior conviction, a drug felony, indicates that it has high impeachment value [because] . . . 'drug trafficking is inherently deceptive' and that 'secrecy and deception are essential hallmarks of the drug trade'"); *United States v. Phillips*, 487 F. Supp. 3d 1126, 1131 (D.N.M. 2020) ("[A] drug trafficking conviction is of little relevance to Mr. Phillips' character for truthfulness . . . ."); *Dover-Hymon v. Southland Corp.*, Civ. A. No. 91-1246, 1993 WL 419705, at *6 (E.D. Pa. Sept. 27, 1993) ("Evidence of a prior drug conviction is only minimally probative of a witness' character for truthfulness, if at all.").

After reviewing these conflicting decisions on the probative value of a prior felony drug conviction on a defendant's character for truthfulness, it appears incongruent to state as a blanket rule that prior felony drug convictions lacking any elements or circumstances involving dishonesty or false statements are always probative to a defendant's character for truthfulness simply because Rule 609(a)(1)(B) pertains to a proper purpose: impeaching a defendant's credibility should they testify at trial. The Court notes that one of the aforementioned rationales for reaching this relevancy determination is the notion "that a narcotics trafficker lives a life of secrecy and dissembling, in

19

the court of the activity; being prepared to say whatever is required by the demands of the moment, whether the truth or a lie." *Murphy*, 172 F. App'x at 463 (quoting Trial Tr.); *see also Barone*, 1997 WL 786436, at *4 (E.D. Pa. Dec. 3, 1997) ("Like the court in *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977), we recognized that 'a drug trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie.' Thus, the fact that the Defendant had been previously convicted of possession with the intent to deliver cocaine, was relevant to the jury's determination of the Defendant's credibility."), *aff'd* 166 F.3d 1206 (3d Cir. 1998). Adopting this notion places all drug dealers into the same box, regardless of the conduct they engaged in which led to the prior felony drug conviction. An individual may be found guilty for possessing a controlled substance with the intent to deliver, graded as a felony under Pennsylvania law, without living a life of secrecy and saying "whatever is required by the demands of the moment." *Murphy*, 172 F. App'x at 463; *see also* 35 P.S. § 780-113(a)(30) ("The following acts and the causing thereof within the Commonwealth are hereby prohibited: . . . (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act . . . ."); *id.* § 780-113(f)(1)–(3) (setting forth which controlled substance offenses were graded as felonies). For instance, an individual may be found guilty of this felony offense by openly walking around a street corner carrying packages of crack cocaine in a backpack while inquiring whether passerby would be interested in purchasing said crack cocaine.[46] An individual may also be found guilty of this felony offense by producing and selling

---

[46] As discussed in another Memorandum Opinion pertaining to a motion Maxwell filed in this case, there was video surveillance footage of Maxwell's actions on June 2, 2022, which led to the charges against him in the Superseding Indictment. The video shows Maxwell, *inter alia*, casually moving within the area of the surveillance camera (which was surveilling an intersection in Philadelphia), openly moving packages (which were later determined to contain marijuana and

methamphetamine from their home without having misrepresented their activities to anyone. At bottom, there is nothing inherent about **all** illegal drug sales which would relate to a drug dealer's character for truthfulness. Therefore, without more information about the circumstances surrounding his prior felony drug convictions, the Court concludes that these convictions have little to no relevance to his character for truthfulness, and as such, the first *Bedford* factor weighs in favor of exclusion.[47]

The Court recognizes that the Government proposes that it will reduce any possible prejudice by referring "only to 'a prior felony conviction' and not the specific underlying facts." Mr. Gillard Mot. at 3. While this proposal may reduce possible prejudice, it does not increase the probative value of Mr. Gillard's prior felony convictions as to his character for truthfulness. Instead, "the probative value of a prior felony conviction will be ***diminished*** where the jury is not provided information about the prior conviction that would help in evaluating the extent to which

---

crack cocaine) between two bags that were in his possession, openly speaking to and exchanging items with Ms. Gillard while she sat in the passenger seat of a vehicle with her door open, and openly conducting hand-to-hand transactions with individuals in the vicinity while in clear view of other individuals in the vicinity. Although Maxwell did not appear to be advertising his ability to sell illegal narcotics, and while hand-to-hand transactions are somewhat secretive in nature due to the inability to truly view what was being exchanged, he did not appear to be living a life of secrecy while allegedly selling controlled substances.

[47] By reaching this conclusion, the Court is not at all minimizing the significant negative impact drug trafficking has on our society, *see, e.g.*, UNITED STATES DEPARTMENT OF JUSTICE NATIONAL DRUG INTELLIGENCE CENTER, NATIONAL DRUG THREAT ASSESSMENT 2010: IMPACT OF DRUGS ON SOCIETY (Feb. 2010), https://www.justice.gov/archive/ndic/pubs38/38661/drugImpact.htm ("The trafficking and abuse of drugs in the United States affect nearly all aspects of our lives. The economic cost alone is immense, estimated at nearly $215 billion. The damage caused by drug abuse and addiction is reflected in an overburdened justice system, a strained healthcare system, lost productivity, and environmental destruction."), or ignoring that drug dealing often involves lying and/or deception. *See, e.g.,* Zach Sokol, *Drug Dealers Explain How They Keep Their Hustles Secret from Their Families*, Vice (Mar. 13, 2016, 8:30 AM), https://www.vice.com/en/article/9bg7zv/the-lies-drug-dealers-tell-people-to-keep-their-careers-secret. Instead, the focus here is limited to whether drug dealing, in itself, is always probative to one's character for truthfulness. The Court concludes that it is not without evidence of the circumstances of the conviction.

the offense reflects on the defendant's veracity as a trial witness." *Caldwell*, 760 F.3d at 287 n.14 (emphasis added). This is because "[t]here are many types of felonies, and not all felony convictions strongly support the inference that the defendant is untrustworthy." *Id.* Accordingly, the Government's proposed approach to sanitize Mr. Gillard's prior convictions does not cause the first *Bedford* factor to weigh in favor of admitting these prior felony convictions under Rule 609(a)(1)(B).

    ii.  *Second Factor: The Age of the Prior Convictions*

As for the second factor, Mr. Gillard's prior convictions at issue in the Government's Motion are less than ten years old and, as such, are not subject to the restriction in Rule 609(b). Since the prior convictions occurred within the ten-year period, this second factor weighs in favor of admissibility.

    iii.  *Third Factor: The Importance of Defendant's Testimony to His Defense at Trial*

Until this week, this factor would have been difficult to assess in this case because the Court was unaware of the substance of Mr. Gillard's defense at trial. Then, after a status of counsel hearing on January 16, 2024, the Court granted Mr. Gillard's request to allow his counsel to withdraw so that he could represent himself at trial along with the assistance of standby counsel. Based on what Mr. Gillard expressed during the status of counsel hearing, while it is not definitive, it nonetheless appears that Mr. Gillard plans on testifying in his own defense at trial.

Mr. Gillard's apparent desire to testify does not end the inquiry on this third factor because the Court must evaluate the importance of his testimony. Unfortunately, there is not enough information in the record before the Court to evaluate whether Mr. Gillard must testify to refute the Government's case against him. Nevertheless, this third factor weighs against admitting his prior felony convictions because, as a *pro se* litigant, it seems highly unlikely that Mr. Gillard will

be able to "establish the subject matter of [his] testimony" by means other than by testifying on his own behalf. *Caldwell*, 760 F.3d at 288 (quoting *Causey*, 9 F.3d at 1344). Therefore, the importance of his testimony is increased.

> iv.     *Fourth Factor: Significance of Defendant's Credibility to the Case*

If Mr. Gillard were to testify, it appears that his credibility will be important because his defense would seemingly turn on the jury believing his version of the offenses charged against him. As such, this factor could weigh in favor of admitting Mr. Gillard's prior felony convictions to impeach his testimony should he testify at trial. However, based on some of Mr. Gillard's statements about his defense during the status of counsel hearing, it is possible that Mr. Gillard will testify "as to inconsequential matters or facts that are conclusively shown by other credible evidence," *id.* (quoting Wright & Gold, *Federal Practice and Procedure* § 6134, at 258), which would diminish the probative value of his prior felony convictions. *Id.* Accordingly, it is premature for the Court to analyze this factor until, and whether, Mr. Gillard chooses to testify on his own behalf at trial.

> v.     *Balancing of the Four Bedford Factors*

Having addressed the four *Bedford* factors, the Court must determine whether the probative value of Mr. Gillard's prior felony convictions outweighs their prejudicial effect. The first and third factors weigh against admitting these prior convictions regardless of whether the Government sanitizes them or not. The second factor weighs in favor of admissibility. The fourth factor cannot be appropriately assessed at this time due to the uncertainty of what Mr. Gillard intends to do at trial, in large part because he has now chosen to represent himself. Therefore, at this stage in the case, the Government has not satisfied its burden to show that the probative value of Mr. Gillard's

prior felony convictions outweighs their prejudicial effect under Rule 609(a)(1)(B), and its Motion *in Limine* will be denied.

Nevertheless, this denial will be without prejudice. Should circumstances present themselves at trial, namely, Mr. Gillard testifying in his own defense, along with additional indicia that his credibility will be significant to his defense, the Government may renew its request to introduce his prior convictions—either in their original or sanitized form—for impeachment under Rule 609(a)(1)(B). *See Dubose*, 639 F. Supp. 3d at 515 n.9 (discussing tension between third and fourth *Bedford* factors because "the importance of the defendant's credibility likely increases as the importance of his testimony does," and indicating "[i]f the evaluation of these factors changes at trial, the parties may seek reconsideration of this ruling" (citing *Caldwell*, 760 F.3d at 288 n.15)). Further, if Mr. Gillard were to open the door to any or all of his prior felony convictions which are the subject of this Motion, the Government would have grounds to impeach him with any prior convictions for which he opened the door. *See United States v. Lugo*, 170 F.3d 996, 1005 (10th Cir. 1999) (concluding district court did not abuse discretion in admitting prior felony conviction for possession of controlled substance where defendant claimed he lacked involvement with drugs, court conducted proper balancing analysis, and court gave appropriate limiting instruction to jury); *United States v. Parson*, No. 21-CR-0112, 2021 WL 4523496, at *6 (N.D. Okla. Oct. 4, 2021) ("On balance, the Court finds that the probative value of admitting the prior conviction does not outweigh its danger of prejudice, and the defendant's motion in limine to exclude the prior conviction . . . is granted. However, the Court stresses that, should the defendant open the door to the prior conviction during testimony, [the Government] would have grounds to admit the prior conviction for impeachment purposes at that time."); *see also United States v. Gilmore*, 553 F.3d 266, 272 (3d Cir. 2009) ("Rule 609 controls the use of prior felony convictions to impeach a

witness' general character for truthfulness, but impeachment by contradiction concerns the use of evidence to impeach a witness' specific testimony. Accordingly, prior felony convictions more than ten years old may be used to impeach by contradiction even if they do not satisfy Rule 609's balancing and notice conditions."). Furthermore, if the Court were to ultimately permit Mr. Gillard's prior felony convictions to be admitted for impeachment purposes, an appropriate limiting instruction will be given to the jury.

b.   <u>Jackson</u>

The Government seeks to impeach Jackson with his 2013 conviction for possession with intent to deliver. Like the Government's request to introduce prior felony drug convictions of Mr. Gillard, its request to introduce Jackson's prior felony drug conviction will be denied because a review of the *Bedford* factors and subsequent balancing of those factors shows that the probative value of Jackson's prior felony drug conviction does not outweigh any prejudicial effects to him.

i.   *First Factor: The Kind of Crime Involved*

As explained above, the impeachment value of Jackson's 2013 felony drug conviction has little to no relevance to his character for truthfulness. While the Government has pointed out that Jackson received a lengthier sentence than the sentence Mr. Gillard received for his prior drug convictions, it did not present any evidence concerning the circumstances of Jackson's prior offense. As such, there is no basis for the Court to imply dishonesty to this prior conviction. Additionally, as already explained, the Government's proposal to sanitize the prior conviction by referring to it as a "prior felony conviction" to further mitigate any possible prejudice only serves to further diminish its relevance to Jackson's character for truthfulness. Thus, the first *Bedford* factor weighs in favor of exclusion.

25

This "balance tilts further towards exclusion," *Caldwell*, 760 F.3d at 286, because Jackson's 2013 felony conviction for possession of a controlled substance with intent to deliver is very similar to his individual charges for drug distribution in the Superseding Indictment. In addition, Jackson's alleged role in the drug trafficking conspiracy charge appears to be based solely on his drug distribution activities. Therefore, the first *Bedford* factor significantly weighs in favor of exclusion.

ii.   *Second Factor: The Age of the Prior Convictions*

Jackson's 2013 felony drug conviction is not more than ten years old because he was sentenced to serve a minimum of four years imprisonment. *See* Fed. R. Evid. 609(b) (providing different admissibility standard for prior convictions "if more than 10 years have passed since the [defendant's] conviction *or release from confinement for it, whichever is later*"). Jackson does not attempt to argue that this conviction falls outside the ten-year period which would require an admissibility analysis under Rule 609(b). *See* Jackson 609 Opp'n at ECF p. 6 ("As of the scheduled trial date of February 12, 2024, Defendant's conviction under Criminal Docket 547-2013 will be more than 10 years, however, his date of release from his sentence will not."). Yet, he does contend that the probative value of this conviction is low because it occurred over ten years ago. *See id.* (requesting that Court consider probative value of his 2013 felony drug conviction "[e]ven if [it] satisfies the time limit of Rule 609(b)").

Although the degree of relevancy can diminish if a defendant's prior felony conviction is on the older end of the ten-year spectrum, there is no information in the record as to how Jackson spent the past ten years. It is possible that he was never released on parole on his 2013 felony

conviction and stayed incarcerated for the entirety of the eight-year maximum sentence.[48] If so, he would have been released within the last few years, and the probative value of a prior felony conviction would seemingly "remain undiminished." *Caldwell*, 760 F.3d at 287. It is also equally possible that Jackson committed the prior offense while relatively young, and he has "maintained a spotless record" since the 2013 felony conviction.[49] Due to this uncertainty, the Court cannot

---

[48] In his brief, Jackson claims that he "was made eligible for the RRRI program with a minimum of 40 months." Jackson 609 Opp'n at ECF p. 6. RRRI, the acronym for the Commonwealth of Pennsylvania's Recidivism Risk Reduction Initiative,

> enables eligible, non-violent offenders to reduce their minimum sentences if they complete recommended programs and maintain a positive prison adjustment, or in other words, they practice good conduct and remain misconduct free during their incarceration. The reduction provided is a percentage off their minimum sentence that is based upon the sentence length.

Recidivism Risk Reduction Initiative, COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS, https://www.cor.pa.gov/About%20Us/Initiatives/Pages/RRRI.aspx (last visited January 19, 2024). Simply because Jackson was eligible for RRRI does not mean that he completed the requirements to have his minimum sentence reduced, and there is no evidence he completed those requirements.

[49] In its brief, the Government asserts:

> [T]here are no facts suggesting a change in the defendant's character. Quite the contrary, after two prior drug distribution convictions and significant terms of incarceration, the defendant stands before this court charged with the wholesale trafficking of methamphetamine and PCP. The defendant's character has not improved but worsened and his criminal conduct has escalated.

Gov't's Jackson Mot. at 6–7. Undoubtedly, Jackson received significant sentences for his 2009 and 2013 felony drug convictions. Nevertheless, there was no evidence presented about how long Jackson was incarcerated after his 2013 conviction. In addition, without any facts about the circumstances of Jackson's convictions, it would be improper to conclude that his character has not improved, and even more improper to determine that his character has worsened, and his criminal conduct has escalated. Based on the sentence he received, Jackson's conduct in 2013 may have also involved possessing methamphetamine with intent to deliver. *See* 35 P.S. § 780-113(a)(30), (f)(1.1) (providing for potential maximum sentence of ten years for possessing certain illegal drugs, including methamphetamine, with intent to deliver). While that possibility does not render Jackson's character any better, it is difficult to conclude that it has gotten worse, much less that it has escalated.

assess whether the probative value of the 2013 felony conviction should be reduced at this time and, as such, is limited to concluding that the second *Bedford* factor generally supports admitting the 2013 felony conviction under Rule 609(a)(1)(B).

> iii.   *Third Factor: The Importance of Defendant's Testimony to His Defense at Trial*

Jackson asserts that his testimony will be important to his defense at trial:

> [G]iven the elements of the charges in the Indictment, the jury may be asked to choose between Defendant's version of events and the events described by the government's witnesses, including both lay and law enforcement witnesses. The credibility of these witnesses will be crucial to establishing the government's case, as well as the defendant's defense. Thus, [Defendant] contends his testimony in this case may be important to demonstrate the validity of his defense and it may be "fundamentally important to his defense."

Jackson 609 Opp'n at ECF p. 8. The Government agrees with Jackson's assessment of the importance of his testimony should he choose to testify in his own defense. *See* Gov't's Jackson Mot. at 7–8. Also, neither party contends that Jackson will be able to establish the subject matter of his testimony through other means at trial. Accordingly, the third factor weighs in favor of excluding Jackson's prior felony conviction.

> iv.   *Fourth Factor: Significance of Defendant's Credibility to the Case*

Although Jackson contends that his testimony will be important in the case because "[t]he credibility of [the Government's witnesses] will be crucial to establishing the [G]overnment's case, as well as [his] case," Jackson 609 Opp'n at ECF p. 8, he also argues that "the significance of his credibility does not weigh strongly in favor of admitting his prior conviction[]" and "his credibility **may** be important to the case." *Id.* at ECF p. 9. There is an inherent conflict in his argument because if he believes his testimony will be important insofar as the jury will need to assess the credibility of the Government's witnesses, he must also believe that the jury will find him credible and,

consequently, find the Government's witnesses incredible. This signifies Jackson's belief that his credibility is significant to his case. Accordingly, the fourth factor weighs in favor of admission of his prior felony drug conviction.

v. *Balancing of the Four Bedford Factors*

Having addressed the four *Bedford* factors, the Court must determine whether the probative value of Jackson's prior felony drug conviction outweighs its prejudicial effect. The first and third factors weigh against admitting this prior felony conviction regardless of whether the Government sanitizes them or not. The second and fourth factors weigh in favor of admissibility. Thus, two factors favor admission of the prior felony conviction under Rule 609(a)(1)(B) and two favor exclusion. Nevertheless, because the first factor strongly weighs against admission due to the similarity between Jackson's prior felony drug conviction and his charges in this case, balancing the four factors weighs in favor of exclusion. Therefore, at this stage in the case, the Government has not satisfied its burden to show that the probative value of Jackson's 2013 felony drug conviction outweighs its prejudicial effect under Rule 609(a)(1)(B), and its Motion *in Limine* will be denied. *See, e.g.*, *United States v. Church*, Crim. Nos. 14-323-3, 14-323-6, 14-323-4, 14-323-22, 2016 WL 613185, at *3 (E.D. Pa. Feb. 16, 2016) ("Overall, the most important factor in this particular case is undoubtedly the similarity between the prior conviction and the charged offense. The Government has failed to meet its burden to demonstrate how the high risk of prejudice presented by that similarity is overcome by the probative impeachment value of the prior crimes."); *United States v. Graves*, Crim. A. No. 06-95-1, 2006 WL 1997378, at *3 (E.D. Pa. July 12, 2006) ("Of the four factors to consider in admitting a conviction under Rule 609(a)(1), two weigh in favor of admission in this case, and two weigh strongly against. Faced with this balance, the Court

29

concludes that the Government has not met its burden of showing that the probative value of the 1993 conviction outweighs its prejudicial effect.").

This denial will also be without prejudice. Should appropriate circumstances present themselves at trial that would warrant the Court reconsidering this decision, the Government may raise the issue with the Court. As with Mr. Gillard, if the Court were to ultimately permit the Government to impeach Jackson with his 2013 felony drug conviction, an appropriate limiting instruction will be given to the jury.

c.      Maxwell

Maxwell did not file a response in opposition to the Government's Motion *in Limine*.[50] Due to this failure, the Government's Motion could be granted as unopposed. *See, e.g.*, *United States v. Steele*, Crim. A. No. 14-110, 2015 WL 13427632, at 1 n.1 (E.D. Pa. Apr. 8, 2015) (pointing out that certain issue was excluded due to defendant's failure to respond to Government's motion *in limine*), *aff'd*, 664 F. App'x 260 (3d Cir. 2016); *United States v. Ligambi*, 972 F. Supp. 2d 699, 704 n.3 (E.D. Pa. 2013) (granting defendant's motion as unopposed due to failure to "rebut" motion). Despite Maxwell's failure to address the Motion, the Court will review the merits of the Government's request because of its potential effect on Maxwell's decision to testify on his own behalf at trial.

i.      *First Factor: The Kind of Crime Involved*

The Government seeks to introduce Maxwell's prior felony convictions for aggravated assault, persons not to possess firearms, and robbery. *See* Gov't's Maxwell Mot. at 2–3. As already explained, the first factor weighs in favor of exclusion of the prior persons not to possess firearms

---

[50] Per the operative Scheduling Order, Maxwell had until no later than October 31, 2023, to file a response in opposition to the Motion. *See* Am. Sched. Order at ¶ 8, ECF No. 152.

charge because it is not probative to Maxwell's character for truthfulness, and it is too similar to his firearm charges in this case, particularly the charge for possession of a firearm by a convicted felon.

Concerning Maxwell's prior felony robbery conviction, several courts have concluded that a prior robbery conviction is probative to a defendant's character for truthfulness. *See United States v. Moore*, 917 F.2d 215, 235 (6th Cir. 1990) (concluding district court did not abuse discretion in allowing Government to impeach defendant with prior felony robbery conviction because it "went to credibility, and had impeachment value, which Rule 609 permits"); *United States v. Givens*, 767 F.2d 574, 580 (9th Cir.) ("[P]rior convictions for robbery are probative of veracity."), *cert. denied*, 474 U.S. 953 (1985); *United States v. Carey*, No. 3-CR-18-037, 2019 WL 6492566, at *3 (M.D. Pa. Dec. 3, 2019) (concurring with Government's argument that defendant's prior robbery conviction was "indicative of dishonesty and ha[s] been found to be probative for truthfulness" (citing cases)). These cases, however, do not explain why a robbery conviction, on its face, is probative to a defendant's character for truthfulness.

Maxwell was convicted of robbery under Pennsylvania law. Under Pennsylvania's Criminal Code, an individual commits a robbery if:

in the course of committing a theft, [they]:

  (i) inflicts serious bodily injury upon another;

  (ii) threatens another with or intentionally puts [them] in fear of immediate serious bodily injury;

  (iii) commits or threatens immediately to commit any felony of the first or second degree;

  (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;

(v) physically takes or removes property from the person of another by force however slight; or

(vi) takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof.

18 Pa. C.S. § 3701(a)(1). Under this definition of robbery, a person could be charged and convicted of robbery if they pointed a firearm at a victim and demanded money from the victim. *See, e.g.*, *Lepre v. Cmwlth. of Pa.*, Civ. A. No. 07-CV-0609, 2008 WL 2562952, at *5 (M.D. Pa. June 24, 2008) (concluding state-court record, which indicated defendant admitted "he pointed a firearm at two service station clerks and demanded money from them" supported state-courts' determinations that defendant was guilty of robbery (quoting Pennsylvania Superior Court Op.)); *Commonwealth v. Wong*, No. 3884 EDA 2017, 2019 WL 1077874, at *8 (Pa. Super. Ct. Mar. 7, 2019) (agreeing with trial court that evidence presented at trial was sufficient to convict defendant of robbery, even though defendant never obtained money from victims, because defendant demanded money from victims and then pointed gun and shot at victims). While this conduct is reprehensible, the Court struggles to find its relevancy to a person's character for truthfulness. As such, without information about the circumstances surrounding a felony robbery conviction under Pennsylvania law, evidence of the robbery conviction alone is of very little or no probative value to assessing a defendant's character for truthfulness.[51]

---

[51] While the admissibility requirements for a prior conviction under Rules 609(a)(1)(B) and (a)(2) are significantly different, the Court points out that a prior robbery conviction is inadmissible for impeachment purposes under Rule 609(a)(2). *See Walker v. Horn*, 385 F.3d 321, 334 (3d Cir. 2004) ("[W]e readily conclude that, although robbery is certainly a very serious crime, it does not involve communicative or expressive dishonesty. Therefore, the district court erred by holding that robbery is a crime involving dishonesty that is automatically admissible under Rule 609(a)(2).").

Here, the Government has not provided any information surrounding Maxwell's prior felony robbery conviction.[52] This precludes an assessment of any possible probative value toward Maxwell's character for truthfulness. In addition, as already explained, the Government's proposal to sanitize this conviction by identifying it only as "a prior . . . felony conviction," Gov't's Maxwell Mot. at 3, does not enhance any possible impeachment value. Therefore, the first factor weighs against admitting Maxwell's prior felony robbery conviction.

Regarding the third and final prior felony conviction the Government seeks permission to admit under Rule 609(a)(1)(B), i.e., Maxwell's prior felony conviction for aggravated assault, it has little to no probative value toward his character for truthfulness. *See Dickens v. Taylor*, 655 F. App'x 941, 945 (3d Cir. 2016) (acknowledging that "convictions for assault are less probative of a witness's truthful character than convictions involving crimes of deception or honesty"); *Brown v. City of Philadelphia*, Civ. A. No. 18-1126, 2020 WL 1888953, at *4 (E.D. Pa. Apr. 16, 2020) (pointing out that individual's prior "aggravated assault and resisting arrest convictions were less probative of honesty"). On the other hand, it is not similar to Maxwell's charges in this case insofar as he is charged with conspiring to commit drug trafficking, possessing controlled substances with intent to deliver, and two firearm offenses. Accordingly, the first factor is either neutral or weighs slightly in favor of exclusion.

---

[52] In its Motion, the Government represented that Maxwell's felony conviction was graded as a first-degree felony. *See* Maxwell Mot. at 3. Presuming that representation is accurate, Maxwell would have had to, in the course of committing a theft, either: (1) "inflict[ed] serious bodily injury on another"; (2) "threaten[ed] another with or intentionally [placed them] in fear of immediate serious bodily injury"; or (3) "committed or threaten[ed to] immediately . . . commit any felony of the first or second degree." 18 Pa. C.S. § 3701(b)(1) (explaining which subsections in robbery statute qualify as first-degree felonies); *id.* § 3701(a)(i)–(iii) (listing offenses).

ii.     *Second Factor: The Age of the Prior Convictions*

Maxwell's prior felony convictions occurred in 2011 and 2012. However, he received lengthy sentences for those convictions which could have kept him incarcerated until approximately 2017 on his minimum sentences alone.[53] Because his release from incarceration would have occurred in approximately 2017, the second factor weighs in favor of admitting these prior convictions.

iii.    *Third Factor: The Importance of Defendant's Testimony to His Defense at Trial*
iv.     *Fourth Factor: Significance of Defendant's Credibility to the Case*

The third and fourth *Bedford* factors are grouped together here because at this point in the case, there is no information about what Maxwell's possible defenses are at trial.[54] The Court recognizes the possible importance of Maxwell's testimony, and the significance of his credibility should he decide to testify on his own behalf at the time of trial. Nevertheless, the Court will not speculate as to what Maxwell's potential defenses are, or even if he will testify on his own behalf.

v.     *Balancing of the Four Bedford Factors*

Based on the assessment of the first two factors, it is very likely that Maxwell's prior felony conviction for persons not to possess firearms is inadmissible at trial due to its similarity to the charge of possession of a firearm by a convicted felon and its little to no impeachment value. As for his prior felony convictions for robbery and aggravated assault, the Court cannot complete the required analysis at this time without knowing more information about what Maxwell possibly

---

[53] As indicated above, Maxwell received a sentence of a minimum of six years for his 2011 aggravated assault conviction and a minimum of five years for his 2012 convictions for robbery and persons not to possess firearms.
[54] The lack of information is in large part due to Maxwell not filing a response to the Government's Motion.

intends to do at trial. Overall, it is premature for an admissibility determination under Rule 609(a)(1)(B) for any of Maxwell's prior felony convictions based on the current record. Accordingly, the Government's Motion *in Limine* will be denied without prejudice to being raised at trial should Maxwell choose to testify in his own defense.[55]

### B.    The Government's Motion *in Limine* to Admit Recordings (ECF No. 177)

### 1.    The Government's Arguments

The Government moves for an order admitting recordings and transcripts law enforcement obtained concerning confidential sources it used during its investigation of Defendants, recorded calls of Defendants, and interviews of Defendants.[56] *See* Gov't's Mot. in Limine to Admit Recordings at 4–5, 8, ECF No. 177. In support of this request, the Government explains that

> The superseding indictment was the result of a lengthy investigation of the defendants by agents of the Federal Bureau of Investigation (FBI). The investigation utilized a number of law enforcement tools including, among other

---

[55] As with the Government's other Motions *in Limine* seeking admissibility determinations under Rule 609(a)(1)(B), should the Court permit the Government to impeach Maxwell with any of his prior felony convictions, an appropriate limiting instruction will be given to the jury.

[56] In this Motion, the Government seeks an order declaring that

1. The recording device used to record was capable of accurately recording the conversations;
2. The operator of the recording device was competent;
3. The recordings are authentic and correct;
4. There have been no changes in, additions to, or deletions from the recordings;
5. The recordings have been properly preserved;
6. The speakers on the recordings are properly identified;
7. The consenting party to the recording freely and voluntarily consented to the recording of the conversations; and
8. The transcripts of the recordings accurately represent the conversations on the recording and accurately identify the speakers and parties to the recorded conversations.

*See* ECF No. 177 at ECF p. 1. It also seeks to have the Court direct that it "may introduce as evidence transcripts of the conversations identified by the government, play the audio and audio/video recordings to the jury and present the jury with the transcripts to read while the recording is playing." *Id.* at ECF p. 2.

things, the use of confidential informants to interact with and record interactions with the defendants, recorded telephone calls between confidential informants and the defendants, and recorded interviews with various defendants after their arrest. The interactions between the confidential informants and . . . the defendants were subject to audio and/or audio/video recordings. In addition, various defendants were interviewed after their arrest and were subject to audio and/or audio/video recordings.

Throughout the pretrial phase of this prosecution, the government has provided the defendants with, among other items, the audio and/or audio/video recordings of the defendants. During the presentation of the evidence in its case-in-chief, the government will offer into evidence these recordings with the defendants. An FBI agent and/or a civilian or cooperating witness will explain the recordings and conversations with the defendants. FBI agents that testify regarding the recordings will explain how the FBI obtained the recorded conversations. In particular, the testimony will detail the collection and storage of this evidence, as well as how the technology used prevents any changes to or deletions from the conversations. Similarly, an agent will explain how confidential sources were given recording devices under agent supervision. The testimony will address how those devices worked, how the recordings were collected and stored, and how surveillance monitored the interactions. The testimony will also address the consent of the confidential source to make the recordings. The agents and/or cooperating witnesses will establish the speakers on all recordings played in court, and will verify that they reviewed the corresponding transcripts to assure that they accurately reflect the recording. Finally, when recordings are played in court, the government will move to display the transcripts to assist the jury's understanding of the conversations.[57]

*Id.* at 4–5 (footnote in original).

The Government argues that it can set forth the appropriate foundation for the introduction of the recordings and transcripts under Federal Rule of Evidence 901(a), which sets forth the requirements for ensuring the authenticity of evidence. *See id.* at 6, 8. The Government also recognizes that some of the factors governing authenticity set forth in *United States v. Starks*, 515 F.2d 112 (3d Cir. 1975), could still be applicable to the Court's preliminary determination on

---

[57] The government is in the process of finalizing transcripts of the recordings and will provide them to the defendants when they become available.

authenticity, but even if they are, the Government can satisfy the relevant *Starks* factors.[58] *See id.* at 6–8. It further contends that the recordings and transcripts are relevant and material to its case. *See id.* at 8.

### 2.    Defendants' Arguments in Opposition

#### a.    Mr. Gillard's Arguments

In his response to the Motion, Mr. Gillard contests the Government's assertion that *Starks* "is no longer good law." Def. Phillip Gillard's Mem. of Law in Opp'n to the Gov't's Mot. to Admit Recordings at 2, ECF No. 198 (quoting Gov't's Mem.). He argues that the Third Circuit Court of Appeals and district courts within the Third Circuit still require a litigant seeking to authenticate a recording to show clear and convincing evidence of the recording's authenticity and accuracy. *See id.* at 2–4. Therefore, he asserts that "the government has to meet a high hurdle of clear and convincing evidence for all *Starks* issues." *Id.* at 4.

#### b.    Dreher's Arguments

Dreher opposes the Government's Motion by arguing that admitting the recordings would mislead and confuse the jury, as well as potentially cause unfair prejudice. *See* Def.'s Resp. in Opp'n to Gov't's Mot. in Limine to Admit Recordings at 2, ECF No. 204. Dreher believes that the Government proposes to

> introduce audio and audio/video and text messages and the like showing photographs of firearms and a Glock switch which were sent from [him] to codefendant Raphael Sanchez. According to the government, the chat was not available to view on [Dreher's] device but it was pulled from codefendant Sanchez's device. Additionally, the government contends that [Dreher] discussed

---

[58] In *Starks*, the Third Circuit held "that the burden is on the government to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings." 515 F.2d at 121. The Government argues that Rule 901 "substantially undermined" *Starks* and, "[t]hus, to the extent that *Starks* required 'clear and convincing evidence' it is no longer good law with respect to the preliminary finding to be made by the trial court." *See id.* at 6.

purchasing/trading firearms and ammunition with many telephone numbers and photos of an individual shooting a pistol at a gun range.

*Id.* at 2–3.

He points out that his charge in this case is based solely on allegations that he was the operator of a car while a passenger in his car conducted a drug transaction and then paid him money. *See id.* He also notes that, *inter alia*, the charge does not involve any of the other Co-Defendants, he has not been charged for any firearms offenses, and no drugs were found on his person. *See id.* As such, Dreher asserts that the Government's proposed evidence concerning his involvement in any gun transactions or firearms generally would be inadmissible prior bad acts under Federal Rule of Evidence 404(b) because the evidence is unfairly prejudicial, it will allow the jury to draw an inference that he had a propensity to commit the charged crime, and it will "create a definite danger of the jury convicting on improper grounds." *Id.* at 3–6.

c.    Jackson's Arguments

Although Jackson filed a response to the Government's Motion, his response does not contain a single argument. *See* Def.'s Resp. to Gov't Mot. in Limine to Admit Recordings at ECF pp. 2–4, ECF No. 205. Instead, the "Argument" portion of his response contains only his recitation of what he apparently believes is the law applicable to the Government's Motion. *See id.* It is possible, based on his request for relief, Jackson is attempting to raise Mr. Gillard's argument as to the applicability of the "clear and convincing" standard in *Starks* to the authenticity/accuracy issue. *See id.* at 4 ("**WHEREFORE**, the defendant, Sharif Jackson, respectfully requests Government's Motion in Limine to Admit Recordings be denied or require the government to make a showing of clear and convincing evidence."). To the extent that Jackson has preserved an argument about the applicability of *Starks* here, the Court will address it below along with Mr. Gillard's identical argument.

### 3.    Applicable Law

Prior to the adoption of the Federal Rules of Evidence, if a party made "a colorable attack . . . as to [an audio recording's] authenticity and accuracy, the burden on those issues shift[ed] to the party offering the [recording]." *Starks*, 515 F.2d at 122; *see also United States v. Rodriguez-Mendez*, No. 22-1422, 2023 WL 3378005, at *5 (3d Cir. May 11, 2023) (explaining that "*Starks* was decided in April 1975, just a few months before the effective date of the Federal Rules of Evidence. The Rules were adopted by the Supreme Court of the United States on Nov. 20, 1972, and, by Pub. L. 93-595, Jan. 2, 1975, 88 Stat. 1926, were enacted, with amendments made by Congress to take effect on July 1, 1975."), *cert. denied*, 144 S. Ct. 314 (2023). This burden required the party offering the recording to "produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recording[]." *Id.* at 121 (citation and internal quotation marks omitted). This could be satisfied by demonstrating the following seven facts:

  (1) That the recording device was capable of taking the conversation now offered in evidence[;]

  (2) That the operator of the device was competent to operate the device[;]

  (3) That the recording is authentic and correct[;]

  (4) That changes, additions or deletions have not been made in the recording[;]

  (5) That the recording had been preserved in a manner that is shown to the court[;]

  (6) That the speakers are identified[; and]

  (7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

*Id.* at 121 n.11 (citation and internal quotation marks omitted).[59]

---

[59] "[I]n the absence of a 'colorable attack,' the Government need not make such an evidentiary showing." *United States v. Yilmaz*, No. 22-cr-00339-4, 2023 WL 6164558, at *2 (E.D. Pa. Sept. 21, 2023) (citations omitted).

Once the Federal Rules of Evidence were adopted, "a less rigid authentication standard" set forth in Federal Rule of Evidence 901(a) applied. *United States v. Fratus*, 559 F. Supp. 3d 420, 422 (E.D. Pa. 2021), *aff'd*, No. 22-1185, 2023 WL 2710270 (3d Cir. Mar. 30, 2023); *see Yilmaz*, 2023 WL 6164558, at *2 (explaining that Rule 901(a) "requires a lesser standard of authentication"). Rule 901(a) states: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). With the adoption of this Rule, "[i]t is unclear whether *Starks* remains relevant." *United States v. Than Le*, 542 F. App'x 108, 117 n.8 (3d Cir. 2013); *see Fratus*, 559 F. Supp. 3d at 422 ("The Third Circuit has not definitely answered the question of whether Rule 901 abrogated *Starks* and continues to reference the *Starks* factors when considering the admissibility of audio records."). "Regardless, because *Starks* addresses the authenticity and accuracy of recordings, while Rule 901 governs authenticating and identifying recordings, it is undisputed that the standard for identifying recordings is solely controlled by Rule 901." *Yilmaz*, 2023 WL 6164558, at *2 (citing *United States v. Hubbs*, Crim. No. 89-498, 1990 WL 27365, at *3 (E.D. Pa. Mar. 12, 1990)); *see also Fratus*, 559 F. Supp. 3d at 422 ("Since Rule 901, courts within the Third Circuit 'generally apply the Starks factors to determine the authenticity of a tape recording and use a preponderance of the evidence standard to identify a speaker on the recording.'" (quoting *United States v. Davis*, Crim. A. No. 18-270, 2018 WL 6524240, at *8 (E.D. Pa. Dec. 12, 2018))).

When identifying a voice on an audio recording, the party offering the recording need only provide evidence of "[a]n opinion identifying a person's voice--whether heard firsthand or through mechanical or electronic transmission or recording--based on hearing the voice at any time under circumstances that connect it with the alleged speaker." Fed. R. Evid. 901(b)(5). This burden to

"identify[] a speaker on a recording is relatively minimal." *Yilmaz*, 2023 WL 6164558, at *2 (citation and internal quotation marks omitted). "The government need only produce evidence sufficient to convince a reasonable jury by a preponderance of the evidence that defendant is the speaker in order to permit a jury to hear the tape recording." *Tubbs*, 1990 WL 27365, at *3.

####         4.        Analysis

The Government's Motion *in Limine* will be denied without prejudice. At this point in the litigation, no Defendant has raised an objection to the authenticity or accuracy of any of the Government's recordings, so it need not even have filed this Motion. *See Yilmaz*, 2023 WL 6164558, at *2 ("[I]n the absence of a 'colorable attack,' the Government need not make such an evidentiary showing."). Moreover, the information submitted by the Government in support of its Motion is insufficient for this Court to address any authenticity or accuracy issues at this time. The Government may raise its arguments concerning the audio/video recordings it seeks to introduce, and its desire to introduce and supply the jurors with transcripts of those recordings, if needs to do so at trial.

####     C.    **Government's Motion *in Limine* for a Determination that Records Qualify as Business Records Under Federal Rule of Evidence 803(6) (ECF No. 179)**[60]

####         1.        The Government's Arguments

The Government moves for a preliminary determination under Federal Rule of Evidence 104 that it has satisfied the foundational prerequisites for the admissibility of certain evidence pursuant to Federal Rule of Evidence 803(6), which is the business records exception to the hearsay rule. *See* Gov't Mem. of Law in Supp. of Mot. in Limine for a Determination that Records

---

[60] The Government titles what appears to be its Motion and its supporting memorandum of law as its memorandum of law. *See* ECF No. 179 at ECF pp. 3, 4. The Court interprets the first of these documents as the actual Motion.

Qualify as Business Records Under Federal Rule of Evid. 803(6) ("Records Mem.") at 4, ECF No. 179. This evidence consists of "call detail subscriber information, and cell site location information records created and maintained by the cellular telephone companies that supplied cellular phone service to the defendants as well as records associated with Diane Gillard's iCloud account."[61] *Id.* at 5. The Government represents that these "records show communication and location data of the defendants' phones during the charged conspiracy." *Id.*

In support of this Motion, the Government has submitted certificates from records custodians at Apple, Inc. and T-Mobile, *See* Records Mem., Ex. B. It also points out that it was still in the "process of collecting several other business record certificates" and represented that it "will provide them to the defendants in advance of the pre-trial hearing."[62] *Id.* at 6. It further argues that it has satisfied the requirements of Rule 803(6) and that the Court preliminarily ruling on these records would not violate the Confrontation Clause of the Sixth Amendment. *See id.* at 5–9.

### 2.    Defendants' Arguments in Opposition

#### a.    Mr. Gillard's Arguments

Mr. Gillard opposes the Government's Motion because, contrary to the Government's assertion, its proposal for preliminary admission violates the Confrontation Clause based on *Crawford v. Washington*, 541 U.S. 36 (2004). *See* Def.'s Resp. to Gov't Mot. to Admit Business Records at ECF p. 3, ECF No. 199. He argues that the certifications attached to the Government's motion were "likely made in anticipation of litigation" and "are out of court statements made with the intent that they would be used at trial in order to establish certain facts at trial." *Id.* He asserts

---

[61] The specific items of evidence referenced in this motion are attached as Exhibit A to the Government's Motion. *See* ECF No. 179 at ECF pp. 2, 10. They appear to be records from Apple, Inc., T-Mobile, and AT&T. *See id.*

[62] The Government was referencing the hearing which occurred on December 12, 2023.

that he never had the chance to "examine the drafters of the certifications prior to trial." *Id.* at ECF pp. 3–4. Therefore, he contends that the certifications are "testimonial and cannot be used to lay a foundation for the admissibility of business records under Rule 803(6)." *Id.* at 4.

### b.     Dreher's Arguments

Dreher opposes the Government's Motion because "the documents [it] seeks to admit indicate a lack of trustworthiness." Def.'s Resp. in Opp'n to Gov't's Mot. in Limine to Admit T-Mobile Records as Business Records ("Dreher Resp.") at 2, ECF No. 203. He claims that this lack of trustworthiness is illustrated by the Government's failure to provide the business records to the Court and its failure to describe the documents in either its motion or the certification of authenticity. *See id.* at 4. He asserts that the Government's description of the documents as, for example, "call detail, cell cites [sic], subscriber information for 267-836-7749 (Melvin Dreher) . . . is completely meaningless to the defendant and his counsel." *Id.* As such, he requests that a T-Mobile custodian must testify as an authenticating witness at trial. *See id.*

### c.     Jackson's Arguments

Jackson's argument is contained in a single paragraph of his response:

> The certifications are out of court statements made with the intent that they would be used at trial to establish certain facts at trial. The records that the government is requesting to admit under Rule 803 and 902 are testimonial statements of witnesses that will not appear at trial and, therefore, violate the Confrontation Clause of the Sixth Amendment unless the witness is unavailable to testify, and the defendant has a previous opportunity to cross-examine the witness.

Def.'s Resp. to Gov't's Mot. in Limine to Admit Business Records at ECF pp. 3–4, ECF No. 206.

### 3.     Analysis

This Court is required to "decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). Here, the Government is seeking

a preliminary ruling relating to the admissibility of certain cell phone records under Federal Rule

of Evidence 803(6). Rule 803(6) provides that

> "[t]he following [is] not excluded by the rule against hearsay, regardless of whether
> the declarant is available as a witness:
>
> . . .
>
> **(6) Records of a Regularly Conducted Activity.** A record of an act, event,
> condition, opinion, or diagnosis if:
>
>> **(A)** the record was made at or near the time by--or from information transmitted
>> by--someone with knowledge;
>>
>> **(B)** the record was kept in the course of a regularly conducted activity of a
>> business, organization, occupation, or calling, whether or not for profit;
>>
>> **(C)** making the record was a regular practice of that activity;
>>
>> **(D)** all these conditions are shown by the testimony of the custodian or another
>> qualified witness, or by a certification that complies with Rule 902(11) or (12)
>> or with a statute permitting certification; and
>>
>> **(E)** the opponent does not show that the source of information or the method or
>> circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Rule 803(6)(D) indicates that a certification complying with Federal Rule of Evidence

902(11), if it contains the information required by Rule 803(A)–(C), can lead to records of

regularly conducted activity being admitted. Rule 902(11) provides:

> The following item[] of evidence [is] self-authenticating; [it] require[s] no extrinsic
> evidence of authenticity in order to be admitted:
>
> . . .
>
> **(11) Certified Domestic Records of a Regularly Conducted Activity.** The
> original or a copy of a domestic record that meets the requirements of Rule
> 803(6)(A)-(C), as shown by a certification of the custodian or another qualified
> person that complies with a federal statute or a rule prescribed by the Supreme
> Court. Before the trial or hearing, the proponent must give an adverse party
> reasonable written notice of the intent to offer the record--and must make the record

and certification available for inspection--so that the party has a fair opportunity to challenge them.

Fed. R. Evid. 902(11).[63] "Rules 902(11) and 803(6) are . . . designed to work in tandem." *United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014).

Here, no Defendant has argued that the certifications attached to the Government's Motion do not satisfy Rules 902(11) and 803(6). Instead, Mr. Gillard and Jackson contend that if the Court preliminarily rules that the business records identified by the Government are admissible at trial, it will violate *Crawford* and the Sixth Amendment's Confrontation Clause. They are mistaken.

The Confrontation Clause provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against [them]." U.S. Const. amend. VI. In *Crawford*, the Supreme Court held that "[w]here ***testimonial evidence*** is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination." 541 U.S. at 68 (emphasis added). In other words, the Court

> explained that the Confrontation Clause prohibits the introduction of out-of-court, testimonial statements by a non-testifying witness, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine them. While the Court declined to provide a comprehensive definition of the term "testimonial," it agreed that several definitions share the same "common nucleus": "ex parte in-court testimony or its functional equivalent," "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Thus, a threshold question in a Confrontation Clause analysis is whether the out-of-court statement is "testimonial," and, for that matter, whether it is indeed a statement.

*Cagno v. Adm'r, N.J. State Prison*, 642 F. App'x 189, 193 (3d Cir. 2016) (omission in original) (internal footnotes omitted).

---

[63] The Government's quoted text from Rule 902(11) does not appear to match the current version of the Rule. *Compare* Records Mem. at 6, *with* Fed. R. Evid. 902(11).

Contrary to the arguments by Mr. Gillard and Jackson, "*Crawford* does not apply to the foundational evidence authenticating business records in preliminary determinations of the admissibility of evidence" under Federal Rule of Evidence 104. *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007). Even if *Crawford* did apply to the preliminary analyses of the admissibility of business records under Rule 803(6), it still would not apply here because the certifications attached to the Government's Motion are not "testimonial" insofar as there is no indication that the certifications or the records were created "for the sole purpose of providing evidence against a defendant" instead of being created to "authenticate or provide a copy of an otherwise admissible record."[64] *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 322–23 (2009); *see also Davis v. Washington*, 547 U.S. 813, 822 (2006) (explaining that statements are testimonial when their primary purpose "is to establish or prove past events potentially relevant to later criminal prosecution"); *see, e.g.*, *United States v. Denton*, 944 F.3d 170, 184 (4th Cir. 2019) ("[T]he business record certifications form Facebook, Google, and Time Warner Cable did nothing more than authenticate the business records to which they pertain. We are thus satisfied that the district court's admission of those certifications did not contravene Denton's Sixth Amendment confrontation right."); *United States v. Weigand*, No. 20-cr-188, 2021 WL 568173, at *1 (S.D.N.Y. Feb. 14, 2021) ("[A] business record properly admitted pursuant to Federal Rule of Evidence 803(6) 'cannot be testimonial because a business record is fundamentally inconsistent with what the Supreme Court has suggested comprise the defining characteristics of testimonial evidence,' *United States v. Feliz*, 467 F.3d 227, 233-34 (2d Cir. 2006), *e.g.*, that the 'primary purpose' of the evidence 'is to establish or prove past events potentially relevant to later criminal prosecution,'

---

[64] Mr. Gillard's conclusory assertion that the records were created for the sole purpose of providing evidence against him is insufficient to raise a colorable argument.

*Davis v. Washington*, 547 U.S. 813, 822 (2006). By the same token, courts across the country have

held, and this Court agrees, that a custodian's certification pursuant to Federal Rule of Evidence

902(11) is not testimonial."). Accordingly, there are no Confrontation Clause issues that the Court

needs to address at this time.

As for Dreher's opposition to the Government's Motion, he correctly points out that the

Government did not provide the records sought to be introduced to the Court, and he accurately

identifies one out-of-circuit district court decision in which the court determined that the failure to

provide the business records sought to be admitted was a strong factor in requiring the Government

to bring the records custodian to trial. *See* Dreher Resp. at 3 (citing *United States v. Petre*, No. 17-

cr-00089, 2017 WL 3499929 (D. Me. Aug. 16, 2017)).[65] Nevertheless, the case he cites is

---

[65] In *Petre*, the district court discussed its reasoning for requiring the presence of the custodian as follows:

> One problem here is that the records themselves have not been submitted to the Court by the Government and, therefore, it is difficult to know—other than in general terms—the specific reason for Mr. Petre's objections. For example, Mr. Petre says that some portions of the records require express verification, such as statements allegedly attributable to Mr. Petre himself. *Def.'s Opp'n* at 4 n.3. In this argument, he notes that some courts have required the records custodian to confirm the business' standard practices of verifying that the person is who he claims to be. *Id.* Mr. Petre is also worried that some of the records may have been compiled expressly for trial. *Id.*

> In these circumstances, even though it is an added inconvenience and expense for the Government, the Court concludes that Mr. Petre has raised sufficient doubts about the trustworthiness of the documents to justify the presence of the records custodian at trial. Rule 803(6) provides a means to make litigation more efficient if there is no legitimate controversy about whether the proffered records meet the standards of the Rule. But it is not intended to allow automatic admission of those records without the testimony of an appropriate records custodian in the face of the opponent's good faith and specific objections. Similarly, without the record before the Court, it is difficult to assess whether the proffered records pose any *Crawford / Cameron* questions.

2017 WL 3499929, at *4.

nonprecedential and distinguishable, and the Court declines to take the leap Dreher desires and determine that the T-Mobile business records and certification he challenges are insufficiently trustworthy enough to warrant requiring the records custodian to appear at trial.

Dreher appears to concede that the Government has satisfied the requirements of Rule 803(6)(A)–(D), as he challenges only the trustworthiness of the certification and records. *See id.* at 2–4. Because the Government, as the proponent of the evidence, "has established the stated requirements of the exception--regular business with regularly kept record, source with personal knowledge, record made timely, and foundation testimony or certification--then the burden is on the opponent to show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803, advisory committee's notes to 2014 Amendments. The burden shifts to the opponent because "the basic admissibility requirements are sufficient to establish a presumption that the record is reliable." *Id.*

Here, the burden has shifted to Dreher to demonstrate a lack of trustworthiness. To satisfy this burden, Dreher

> is not necessarily required to introduce affirmative evidence of untrustworthiness. For example, the opponent might argue that a record was prepared in anticipation of litigation and is favorable to the preparing party without needing to introduce evidence on the point. A determination of untrustworthiness necessarily depends on the circumstances.

*Id.*

The Court finds that Dreher has failed to satisfy his burden to "show that the possible source of the information or other circumstances indicate a lack of trustworthiness." *Id.* As already stated, the only basis for Dreher's opposition is the Government not providing a more specific description of the business records and failing to submit those records to the Court. While it possibly would have been prudent for the Government to provide additional specification in its Motion and/or

submit the records for the Court's consideration, its failure to do so is not enough to indicate a lack of trustworthiness at a Rule 104 proceeding.

Additionally, the court does not find *Petre* to be persuasive. The *Petre* court did not require the records custodian to appear at trial simply because the Government had not provided it with the business records at issue. Instead, the defendant had raised several specific concerns about the trustworthiness of the records, such as (1) portions of the records allegedly requiring express verification, and (2) the records possibly being compiled expressly for trial. *Petre*, 2017 WL 3499929, at \*4. The court's inability to address those concerns without the records before it appears to have led it to require the records custodian to appear at trial.

In this case, Dreher has not expressed any concerns about the records possibly being compiled expressly for trial or other concerns identified by the defendant in *Petre*. Admittedly, the trustworthiness cannot be addressed at this point without the documents, but Dreher cannot simply state that there are possibilities of untrustworthiness simply because they are not before the Court. Instead, he needed to do more to satisfy his burden to show untrustworthiness. Because he did not do so, the Court will grant the Government's Motion *in Limine*.[66]

## III.   CONCLUSION

For the reasons set forth above, the Court will (1) deny as moot the Government's Rule 609(a)(1) Motion as to Ms. Gillard, (2) deny without prejudice the Government's Rule 609(a)(1) Motions as to Mr. Gillard and Maxwell, (3) deny without prejudice the Government's Rule 609(a)(1) Motion applying to Jackson insofar as it sought to introduce his 2013 felony drug

---

[66] Since this is only a preliminary ruling, Dreher maintains the ability to challenge the trustworthiness of the Government's business records at the appropriate time in the case. At that time, the Government will need to be prepared to address any trustworthiness issues.

conviction and deny as moot the Motion in all other respects, (4) deny without prejudice the Recordings Motion, and (5) grant the Business Records Motion.

An appropriate order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge